CASE 84—PROSECUTION AGAINST MONT BURTON FOR MURDER.—JAN.
29, 1901.

(Omitted in former reports.)


# Burton v. Commonwealth.

APPEAL FROM CASEY CIRCUIT COURT—W. W. JONES, CIRCUIT JUDGE.

DEFENDANT CONVICTED OF MANSLAUGHTER AND APPEALS. AFFIRMED.

CRIMINAL LAW—EVIDENCE—RES GESTAE—HOMICIDE—SUDDEN AFFRAY.

1. Where the shot which killed deceased was fired at her brother
   H., testimony showing that about five minutes before the kill-
   ing, defendant had drawn a pistol on H. in the public road,
   threatening to kill him, was admissible as part of the res gestae,
   it appearing that H. was then permitted to pass on to his
   house when he came into the yard with a gun and pistol when
   defendant passed, when the fatal shot was fired
2. Even if such evidence was inadmissible it was not prejudicial
   to defendant, as it tended to show that he had reasonable
   grounds to believe that he was in danger, and therefore tended
   to support his plea of self defense
3. It was not error to instruct the jury to find the accused guilty
   of manslaughter if the killing was done in a "sudden affray,"
   it appearing that after defendant drew his pistol on H., threat-
   ening to kill him, he fired four shots at H. and that H. fired
   one at him.

P. H. TAYLOR AND J. BRYAN STONE, ATTORNEYS FOR APPELLANT.

A reversal of the case is asked for the following reasons:

1. The court erred in admitting evidence of what occurred
between defendant and the brother of deceased in the road
prior to the shooting, as we claim it was not part of the *res
gestae* and was prejudicial to defendant. The time which di-
vides the two acts is not the controlling element in determining
the question of *res gestae*.

2. The court erred in its instructions to the jury. As the
court admitted the testimony with reference to the subsidiary
act, as part of the *res gestae* and to show motive in the accused
we claim that the jury should have been told the purpose for
which it was admitted, and that they should consider it only

Burton v. Commonwealth.

in determining the question of motive on the part of the accused to commit the crime.

### AUTHORITIES CITED.

Bishop's Cr. Procedure, vol. 1, sec. 1081, 978, 979, 980, vol. 2, sec. 604; Bouvier's Law Dictionary, the word Affray; Owen v. Com., 89 Ky., 363; York v. Com., 82 Ky., 360; Mitchell v. Com., 78 Ky., 219; Ritte v. Com., 18 B. Mon., 35; Moore v. Com., 7 Bush, 192; Barnett v. Com., 84 Ky., 449; Brook v. Com., 16 R., 356; Trimble v. Com., 78 Ky., 176; Helman v. Com., 84 Ky., 457; Martin v. Com., 93 Ky., 198; Com. v. Blackwell, 93 Ky., 309; Allen v. Com., 86 Ky., 646.

N. H. W. AARON, COMMONWEALTH'S ATTORNEY, AND ROBT. J. BRECKENRIDGE, ATTORNEY GENERAL, FOR COMMONWEALTH.

1. While we insist that the occurrence in the road between accused and the brother of deceased a few minutes before the shooting at the house was a part of the *res gestae*, and therefore admissible in evidence the defendant waived his objection to it by bringing out the same matter in his own testimony.

2. The phrase "and not in his self defense" is not part of the definition of voluntary manslaughter. To insert this phrase in the instruction, as asked by counsel for accused would require the Commonwealth to prove beyond a reasonable doubt —a negative—that the homicide was not committed in his self defense.

3. We submit that the instructions given by the court as a whole present the whole law of the case. Sugg v. Com., 6 R., 50; Hamlet v. Com., 9 R., 418; Baldwin v. Com., 2 R., 439.

OPINION OF THE COURT BY CHIEF JUSTICE PAYNTER—AFFIRMING.

It appears from the testimony of Bryant Holt, a witness for the Commonwealth, that he was going along the public highway, a short distance from his mother's house when he met the appellant and another man. The other party was riding horseback, while the appellant was walking. When they met in the road the appellant threw his pistol down into his face and said: "Throw up your hands or I will kill you." He did not take his hands out of his pockets, and appellant asked him what he meant by having them in his

pockets. Whereupon he told him that he did not mean any-
thing, and then the appellant said: "Well, pass on then."
The appellant and his companion continued along the road
and passed the Holt house. About the time they passed it
Holt went into the yard, thence into the house and procured
his gun and pistol and returned into the yard, his mother
and sisters accompanying him, and according to their testi-
mony, the mother struggled with him to keep him from rais-
ing the gun in a shooting position. According to the testi-
mony of the witness for the Commonwealth the appellant's
companion was in the road on a horse and was between him
and Holt, when he stepped from behind the horse and fired
his pistol four times at Holt, one of the balls taking effect
in the head of the fourteen-year old sister, inflicting a wound
from which she shortly thereafter died. Mrs. Holt testi-
fied that she hallooed to the appellant not to shoot. Before
that time Holt had hallooed to the man on horseback to
"look out over there," and this probably arrested their at-
tention and caused them to stop. The appellant claims that
he did the shooting in self defense.

In explanation of the occurrence detailed by Holt, where-
in he was commanded to hold up his hands, appellant was
permitted to testify that he was acting under an appoint-
ment by a United States deputy marshal, and that he and his
companion were using the deputy marshal's horse, and that
he was using the pistol of that officer; that they had gone
to Casey county to arrest a moonshiner by the name of Roy;
that before he met Holt in the road they were strangers,
never having met before, and when they were in several yards
of each other, Holt put his hand behind him and at once
brought it back to his front pocket; that he thought he had
something in his hand, and when he (Holt) got up to him he
looked at him "straight and hard," then the defendant said

he thought he meant something, hence commanded him to throw up his hands. The first occurrence was about five minutes before the shooting took place. It is insisted that the court erred to the prejudice of the appellant in allowing the Commonwealth to prove what occurred at the first meeting. We are of the opinion that it was part of the res gestae. It was connected with the main fact under consideration, and tended to illustrate its character. It was not a mere narrative of the past occurrence or an isolated act done. To constitute an act or declaration part of the res gestae it need not take place at the time of the litigated act; it may be separated by a lapse of time more or less appreciable.

In Greenleaf on Evidence, 15th edition, volume 1, section 108, in speaking on the subject of res gestae, the author says: "The affairs of men consist of a complication of circumstances so intimately interwoven as to be hardly separable from each other. Each owes its birth to some preceding circumstance, and, in its turn, becomes the prolific parent of others; and each, during its existence, has its inseparable attributes, and its kindred facts, materially affecting its character, and essential to be known in order to a right understanding of its nature. These surrounding circumstances, constituting parts of the res gestae, may always be shown to the jury, along with the principal fact; and their admissibility is determined by the judge, according to the degree of their relation to that fact, and the exercise of his sound discretion, it being extremely difficult, if not impossible, to bring this class of cases within the limits of a more particular description."

It is the theory of the Commonwealth that the appellant did an unlawful act in drawing the pistol upon Holt on the public highway; that after the lapse of five minutes, without

sufficient justification, he fired four times at him, inflicting the wound which resulted in the sister's death. These acts were so connected and related that it was competent for the Commonwealth to prove them so the jury might have before it all the facts and circumstances attending the killing. However, our opinion, is that, the testimoney, instead of being prejudicial, was beneficial to appellant. Except for the act which occurred five minutes before the fatal shot was fired he would have had no occasion to believe that an entire stranger was attempting to take his life, and when Holt appeared in the yard with his gun appellant would have had no occasion to believe that he was attempting to take his life, except for the previous occurrence. This testimony enabled the jury to know that Holt had a grievance against the appellant, and offered him an opportunity to show that Holt's purpose was to shoot him.

Instruction No. 1, was on the subject of murder; No. 2 on manslaughter. They were given in the usual form, but did not contain the words "not in his necessary self-defense," and it is therefore, insisted that they were misleading to the jury, although a proper instruction was given on self-defense. This court has repeatedly held that all the instructions given to the jury must be read together. To do this the question of self-defense was properly and sufficiently submitted to the jury. In instruction No. 2, the court told the jury it should find the accused guilty of manslaughter, if the act was done in sudden affray, or in sudden heat and passion and without previous malice. It is insisted that the court should not have used the words sudden affray, because there was no evidence upon which to base it. The Commonwealth claims that appellant fired four shots at Holt, and the testimony is to the effect that Holt fired one at the appellant. The evidence tends to show that Holt was mak-

ing a strenuous effort to free his gun about the time the four shots were fired by appellant.

Webster defines affray to be "the act of suddenly disturbing any one; an assault or attack. . . . The fighting of two or more persons in a public place, to the terror of others." He also says: "A fighting in private is not, in a legal sense, an affray." He also gives the synonym: "Quarrel; brawl; scuffle; encounter; fight; contest; feud; tumult; disturbance."

The word affray, as used in the manslaughter instruction, does not mean that two persons must engage in a fight on a public road, or be guilty of the common law offense of an affray. The testimony of appellant, and also of the Commonwealth, tends to show that there was an affray. If A halts B on a public highway and attempts to draw a gun on him, and B fires four shots at him, after which A fires one at him, it certainly would constitute an affray. If it did not, it would be difficult to imagine an occurrence which could be called an affray.

The testimony of appellant was abundant upon that question to justify the submission of it, and if it had not been done his counsel would doubtless have urged in an unanswerable argument that the court had erred to his prejudice in not giving such an instruction. The jury was the judge as to the apparent necessity for the accused to fire the fatal shot, and having found against him on that question we will not disturb the verdict.

The judgment is affirmed.